UNITED STATES of America, Appellee,

v.

**Richard A. NAZZARO,
Defendant, Appellant.**

No. 89–1152.

United States Court of Appeals,
First Circuit.

Heard Sept. 13, 1989.

Decided Nov. 16, 1989.

Rehearing and Rehearing En Banc
Denied Jan. 16, 1990.

J. Albert Johnson, with whom Johnson, Mee & May, Boston, Mass., Thomas J. May, Brookline, Mass., and Richard C. Bardi, Boston, Mass., were on brief for appellant.

Alexandra Leake, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief for the U.S.

Before TORRUELLA, SELYA and MAYER *, Circuit Judges.

SELYA, Circuit Judge.

It is with a sense of *deja vu* that we revisit a tawdry chapter in the annals of Massachusetts law enforcement known familiarly as "Examscam," a network of alleged conspiracies aimed at purloining advance copies of civil service examinations and selling them to police officers so they could fraudulently obtain promotions. Earlier this year, we disposed of a group of appeals arising from the prosecution of nine gendarmes and a state legislative aide said to be mired in the muck of Examscam. *See United States v. Doherty,* 867 F.2d 47 (1st Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989). Today, we confront the appeal of another purported Examscam participant, defendant-appellant Richard A. Nazzaro, who was indicted and tried separately. After consideration of appellant's avalanche of arguments, and discussion concerning the more ponderable boulders in the asseverational array, we affirm his convictions on three counts, while reversing on one.

## I. BACKGROUND

The general nature of the overall scheme has been expounded in great detail in *Doherty,* 867 F.2d at 51–54, and it would be pleonastic to repeat it here. A succinct summary suffices, supplemented by the specifics of Nazzaro's involvement. At trial below, the evidence showed that, from the late 1970s until well into 1984, Gerald Clemente and Thomas Doherty repeatedly stole copies of upcoming civil service examinations from the state agency in charge of such testing, the Massachusetts Department of Personnel Administration (MDPA). Clemente's purpose, and practice, was to sell (or sometimes, to give) the exams, with answer sheets, to persons aspiring for appointments or promotions.

On April 21, 1979, the MDPA administered a sergeant's examination for the Metropolitan District Commission (MDC). Prior to that date, Doherty and Clemente gave an advance copy of the test, with an answer sheet, to Nazzaro, an MDC police officer. Nazzaro paid Clemente $3,000 in cash. Not surprisingly, appellant performed superbly on the exam. On April 18, 1980, he was promoted to the rank of sergeant. When the MDPA announced that a lieutenant's examination would be held for the MDC on April 23, 1983, Nazzaro again purchased a stolen advance copy of the test and answers, paying Clemente another $3,000. The examination went well, and appellant became a lieutenant on August 19, 1984.

Thereafter, the tangled web began to fray. A federal grand jury was convened to investigate allegations that certain law enforcement officers had provided illegal assistance to individuals seeking appointments to, or promotions within, local police departments. On May 15, 1986, appellant testified under oath before the grand jury. By that time, the web was fast unravelling, and the government suspected that Nazzaro perjured himself. The grand jury charged him with two counts of conspiracy to commit mail fraud, 18 U.S.C. § 371, and two counts of perjury, 18 U.S.C. § 1623. The conspiracy counts charged that appellant purchased and used illegal, advance copies of two civil service promotions exams from Clemente, his coconspirator and fellow police officer. Count One related to the 1979 sergeant's examination; Count Two related to the 1983 lieutenant's examination. The perjury counts were paired along the same axis: Count Three related to Nazzaro's false grand jury testimony concerning the sergeant's examination; and Count Four related to his testimony anent the lieutenant's examination.

* Of the Federal Circuit, sitting by designation.

At trial in the United States District Court for the District of Massachusetts, Clemente (who had pled guilty to racketeering charges) was the prosecution's star witness. He was, apparently, convincing. The jury found defendant guilty on all counts. This appeal ensued.

## II. ISSUES PRESENTED

Many of Nazzaro's initiatives smack more of hope than reason, and can be rejected without exegetic comment. When his briefs are stripped of prettified ruffles and rhetorical flourishes, two sets of questions merit detailed discussion: (1) Were either or both of the conspiracy counts time-barred? (2) Did the government prove that Nazzaro's allegedly false statements were material to the grand jury's inquiry? Alternatively, did the district court botch its handling of the materiality issue? Having been supplied with no ready-made answer sheet, we deal with these queries *in extenso*. We also treat briefly with two additional points. The first of these concerns juror impartiality. The second concerns what defendant tells us is a vital evidentiary ruling, influencing all counts.

## III. THE CONSPIRACY COUNTS

Appellant argues that the 5-year statute of limitations, 18 U.S.C. § 3282, barred prosecution of the conspiracy counts. We believe that this contention impacts differently upon each of the two affected counts.

### A. *Count One.*

The indictment against Nazzaro was returned on June 21, 1988. All of the critical events pertaining to Count One—the theft of the test papers, the advance dissemination of questions and answers, defendant's payment to Clemente, the examination session, and defendant's ensuing elevation—took place before 1980 ended. Except for the fact that Nazzaro continued to receive his sergeant's salary during 1983 and 1984, no overt act appurtenant to this conspiracy occurred within the 5-year limitation period. On these facts, *Doherty*—a case decided by us after appellant was convicted—is dispositive as to the first count.

In the case of Robert Clemente, a codefendant of Doherty's, we reversed a conspiracy conviction on materially identical facts. *Doherty*, 867 F.2d at 62. In that case, as here, the entire panoply of key events antedated the limitation period. Although the prosecution argued that the acceptance of salary within the limitation period was adequate grounding for the charge, we viewed Robert Clemente's continuing salary payments from his new, undeserved post "as taking place well after, and isolated from, all other concerted activities" anent the charged conspiracy. *Id.* Under such circumstances, mere receipt of salary attributable to the fraudulently obtained position, without more, was not enough to forestall the running of the statute of limitations. *Id.*

At oral argument before us, the government conceded that, as to the sergeant's examination, the record facts concerning Nazzaro were materially indistinguishable from those concerning Robert Clemente. That being so, the ball game is over. As a panel, we are bound to adhere to prior circuit precedent. *See Jusino v. Zayas*, 875 F.2d 986, 993 (1st Cir.1989); *United States v. Reveron Martinez*, 836 F.2d 684, 687 (1st Cir.1988); *Lacy v. Gardino*, 791 F.2d 980, 985 (1st Cir.), *cert. denied*, 479 U.S. 888, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986). If order and fairness are to attend the legal process, identically situated parties should be treated identically. Prosecution of Count One was time-barred. Appellant's conviction thereunder must be reversed.

### B. *Count Two.*

Count Two involved a distinct, separately charged conspiracy with respect to the lieutenant's examination. The facts are different in an important respect, for here defendant's challenge falls between the *Doherty* stools. *Compare, e.g., Doherty*, 867 F.2d at 62 (reversing conspiracy conviction of Robert Clemente) *with id.* (upholding conspiracy convictions of defendants Pino and Deliere because of their involvement in other activities, in addition to receipt of salary payments, during pres-

criptive period). For that reason, careful perscrutation of our earlier opinion is required before plunging into a zone which *Doherty* left unexplored.

In *Doherty*, the government argued that a conspiracy remains in existence until its objective is achieved; and that obtaining higher salary payments was an objective of the prototypical Examscam conspiracy, making the continuing receipt of such salary payments "overt acts" for the purpose of defining the conspiracy's temporal scope. 867 F.2d at 61. The *Doherty* panel (per Breyer, J.) acknowledged that higher salary payments were an objective of the conspiracy and were received within the relevant time frame; the legal question, then, was "whether each defendant's receipt of salary payments ... can count as an 'overt act' for statute of limitations purposes." *Id.* The panel set the stage by noting:

> It may seem reasonable to say that the act of receiving a conspiratorial objective is part of the conspiracy, where the receiving consists of one action, or a handful of actions, taking place over a limited period of time, or where some evidence exists that the special dangers attendant to conspiracies, the dangers of "concerted" activity and "group association" for criminal purposes, remain present until the payoff is received.

*Id.* Judge Breyer then turned to the other side of the coin:

> [W]here receiving the payoff merely consists of a lengthy, indefinite series of ordinary, typically noncriminal, unilateral actions, such as receiving salary payments, *and* there is no evidence that any concerted activity posing the special societal dangers of conspiracy is still taking place, we do not see how one can reasonably say that the conspiracy continues.

*Id.* Any other stance "would for all practical purposes wipe out the statute of limitations" in these kinds of conspiracy cases. *Id.* at 62 (quoting *Grunewald v. United States*, 353 U.S. 391, 402, 77 S.Ct. 963, 972, 1 L.Ed.2d 931 (1957)).

The government's case on the second count of the instant indictment differs from, say, Robert Clemente's case (or the case under Count One, for that matter). The difference is that more transpired within the limitation period than a "lengthy, indefinite series of ordinary" salary payments. The "more" comprises mainly a discrete capstone act—the offering and acceptance of the coveted promotion—which also occurred within the relevant time frame. Does this difference afford the basis for a meaningful distinction? We think that it does.

In the first place, the language of *Doherty*, read as a whole and in context, cuts sharply in favor of the government. The promotion, including Nazzaro's acceptance of it, was charged as an object of the conspiracy[1] and was, in the parlance of *Doherty*, a singular occurrence, "one action ... taking place over a limited period of time." *Id.* at 61. The promotion in no way resembled the "lengthy, indefinite series" of acts which *Doherty* held to be too attenuated a temporal link. And, as *Doherty* explained, "[t]he [Examscam] scheme ... simply *was* a scheme dishonestly to obtain, and to help others obtain, promotions." *Id.* at 58.

Moreover, the *Doherty* panel was meticulous in distinguishing a line of cases cited by the government on the basis that "[i]n each of those cases, the receipt of payment was one or a few discrete events, not an indefinite series continuing long after any active cooperation ceased." *Id.* at 61–62. Nazzaro's promotion, unlike ongoing salary installments, seems to be a "discrete

---

**1.** As charged in the indictment, the Count Two conspiracy had dual objects: defendant was (1) to "be provided illegal assistance in taking the April 23, 1983, civil service examination for promotion to lieutenant in the MDC Police Department"; and (2) to "be promoted to the rank of lieutenant in the MDC Police Department, and thereby receive the benefits of such pro-

motion." We are quick to caution that merely charging that an overt act was an object of the conspiracy is, by itself, insufficient to keep open the limitation period. Indeed, the indictment returned against Robert Clemente said "that [ongoing] salary payments were an object of the conspiracy." *Doherty*, 867 F.2d at 62.

event[ ]," having far more in common with the cases which *Doherty* distinguished, *see, e.g., United States v. Girard,* 744 F.2d 1170, 1172–73 (5th Cir.1984); *United States v. Mennuti,* 679 F.2d 1032, 1035–36 (2d Cir.1982), than with *Doherty* itself. *Mennuti* illustrates the point. There, defendant was charged with a mail fraud conspiracy, having helped to arrange the burning of a coconspirator's dwelling as part of an insurance swindle. *Mennuti,* 679 F.2d at 1034. Mennuti's incentive was an agreement that he could eventually buy the property at a bargain price. *Id.* He was indicted more than five years after the blaze and more than five years after the insurance proceeds were paid; but, the property transfer occurred within the limitation period. *Id.* The Second Circuit held conveyance to be an overt act in furtherance of the conspiracy sufficient to render the indictment timeous. *Id.* at 1035–36. In our opinion, Nazzaro's acceptance of the promotion to lieutenant is on a par with Mennuti's acceptance of the property.

We believe it to be of decretory significance that, in classifying Nazzaro's promotion as an overt act in furtherance of the conspiracy for limitation purposes, we abide by, and promote, the policies which underlay *Doherty*. There, we developed a nearly disjunctive standard [2] for determining a conspiracy's scope for prescriptive purposes: the "payoff" should be considered as part and parcel of the conspiracy either "where the receiving consists of one action ... or where some evidence exists that the special dangers attendant to conspiracies ... remain present until the payoff is received." *Doherty,* 867 F.2d at 61. The *Doherty* approach, therefore, has two equally weighted foci, stated in the alternative. Achieving either focus satisfies the test. In the case at bar, there is no evidence sufficient to meet the second ("special danger[ ]") criterion. Our concern must, therefore, be with the first criterion, that is, with the length and definiteness of the event.

The origins of this criterion are important. The *Doherty* court wanted to avoid stripping statutes of limitations of all meaning, a result that too easily could have occurred if each successive salary payment were to be considered an overt act for purposes of prosecuting a conspiracy charge. Thus, "where receiving the payoff *merely* consists of a lengthy, indefinite series of ordinary, typically noncriminal, unilateral actions, such as receiving salary payments ... we do not see how one can reasonably say that the conspiracy continues." *Id.* (emphasis supplied). In a situation like Robert Clemente's, salary payments at the new, fraudulently obtained rank could continue without limit of time, week by week, month by month, year by year. This would mean that the statute of limitations would be left with no fixed outer rim—a result which *Doherty* found untenable.

Logically, the fact that the sought-after promotion occurred within the prescriptive period should produce a decisive difference. As *Doherty* makes manifest, a concern for preserving the meaningfulness of statutes of limitations lends precedence to considerations of time and definiteness. Nazzaro's acceptance of the lieutenancy slips neatly within this analytic integument. Not only was the promotion the be-all and end-all of the scheme, but it was also within the conspirators' contemplation and comprised a single, readily foreseeable event, closely linked in time and purport with the theft and delivery of the examination. There is no unfairness, under the facts of this case, in beginning the temporal march at the point when Nazzaro raised his hand to take the oath of his new (fraudulently won) office. As we see it, the goal of preserving the significance of statutes of limitations, with its concomitant emphasis on factors such as the length and definiteness of a conspirator's actions, militates strongly against appellant's interpretation.

■ To be sure, the question is not free from doubt. Appellant contends, correctly, that *Doherty* suggests consideration should be given to whether an activity is "ordinary," "typically noncriminal" and "unilateral." 867 F.2d at 61. These

---

**2.** The dichotomy is not perfect. Some payoffs may meet both criteria.

factors carry some weight—but not the day. It is only when an act or series of acts is determined to be "lengthy and indefinite" that the import of ordinariness increases to a determinative level. If an act which comprises a plausible objective of the conspiracy is discrete, unrepetitious, of limited duration, and requires the defendant's active participation—like a promotion—it can be considered as an overt act for limitation purposes, notwithstanding its ordinariness. After all, sitting for the lieutenant's examination was a mundane act, unilateral and typically noncriminal; yet few would be so brazen as to suggest that the test-taking itself should not be considered an overt act in furtherance of the charged conspiracy.

We explained in a previous conspiracy case that the conspirators' motives, designs, and objectives can "transmogrify [an] innocent transaction into an overt act carrying undeniable criminal consequences." *United States v. Cintolo*, 818 F.2d 980, 993 (1st Cir.), *cert. denied*, 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987); *see also Badders v. United States*, 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60 L.Ed. 706 (1916) ("intent may make an otherwise innocent act criminal, if it is a step in a plot") (Holmes, J.). These cases have pertinence here. They cannot be shrugged off on the ground that they dealt with evidentiary, as opposed to statute of limitations, issues. *See Mennuti*, 679 F.2d at 1035 (finding similar attempt to distinguish cases "unpersuasive"). The question is simply one of the conspiracy's scope. And where, as here, the "innocent" act—acceptance of a promotion—is unitary, definite, needful of an active, affirmative step by the defendant, reasonably close in time to theft of the test, fairly characterizable as a central objective of the conspiracy, and intended all along as the goal, we believe that the act falls within the conspiracy's scope.

We sum up. In a conspiracy case, the statute runs from the date of the last overt act in furtherance of the conspiracy. *Grunewald v. United States*, 353 U.S. 391, 396–97, 77 S.Ct. 963, 969–70, 1 L.Ed.2d 931 (1957). The applicable limitation period is five years. 18 U.S.C. § 3282. Nazzaro was promoted to lieutenant on August 19, 1984. He was indicted on June 21, 1988, well within five years of his elevation. Hence, the second count of the indictment was timely.

## IV. THE PERJURY COUNTS

Appellant was also convicted of two counts of perjury.[3] Both counts arose out of testimony which he gave to the federal grand jury on May 15, 1986. With reference to the sergeant's exam, Nazzaro testified, *inter alia:*

Q. Did you yourself obtain any unfair advantage in taking that exam?

A. No, I did not.

Q. Did you have a copy of that exam prior to the time it was given in April, 1979?

A. No, I did not.

Q. Did Gerald Clemente give you a copy of that exam prior to your taking that exam in April, 1979?

A. No, he did not.

Q. At any point in time have you paid Gerald Clemente any money?

A. No, I have not.

＊　＊　＊　＊　＊　＊

Q. Did you have any discussions whatsoever with Gerald Clemente with regard to the 1979 sergeant's examination, whether before or after the date that examination was given?

A. No, I did not.

In regard to the lieutenant's examination, Nazzaro gave strikingly similar testimony:

Q. Did you get a copy of the exam from any person prior to taking the exam in April, 1983?

---

**3.** We use the term colloquially. To be precise, appellant was adjudged to have violated 18 U.S.C. § 1623, which provides in relevant part:
  Whoever under oath ... in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.
18 U.S.C. § 1623(a).

A. No, I did not.

Q. Did you receive any unfair advantage in your taking of that exam?

A. No, I did not.

Q. Did you receive or obtain a copy or information pertaining to the answers to the exam?

A. No, I did not.

Q. Prior to taking the exam, that is?

A. No, I did not.

\* \* \* \* \* \*

Q. Did you have any discussions whatsoever with Gerald Clemente with regard to the 1983 lieutenant's examination, either before or after the giving of that examination?

A. No, I did not.

■ On appeal, defendant does not challenge the knowing falsity of these declarations. Instead, he concentrates his fire on materiality. His initial foray goes hand in glove with his argument anent the conspiracy counts; he contends that his testimony was not material to the scope of the grand jury inquiry because the events about which he testified fell beyond the statute of limitations. Since Nazzaro cannot be prosecuted for his activities, the thesis runs, his testimony concerning those activities is necessarily immaterial, as the inquiry powers of a grand jury extend no further than the boundaries of the criminal statutes whose violation the jurors seek to probe.

■ Appellant is whistling past the graveyard. The inquiry powers of a grand jury are not so tightly constricted. To be "material," testimony need not directly concern an element of a crime for which the grand jury may indict. *See, e.g., United States v. Doulin,* 538 F.2d 466, 470 (2d Cir.) ("grand jury's duty and indeed responsibility to inquire is not coterminous with its power to indict"), *cert. denied,* 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976); *United States v. Nickels,* 502 F.2d 1173, 1176 (7th Cir.1974) ("grand jury's scope of inquiry is not limited to events which may result in criminal prosecution"), *cert. denied,* 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976). Given the wide-ranging investigative function reserved to grand juries, courts must indulge comparable breadth in construing the materiality of the panel's inquiries. *See United States v. Moreno Morales,* 815 F.2d 725, 747 (1st Cir.), *cert. denied,* 484 U.S. 966, 108 S.Ct. 458, 98 L.Ed.2d 397, 98 L.Ed.2d 397 (1987); *United States v. Scivola,* 766 F.2d 37, 44 (1st Cir.1985); *United States v. Berardi,* 629 F.2d 723, 728 (2d Cir.), *cert. denied,* 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980). A grand jury may, for instance, appropriately elicit testimony which merely affords leads or corroborative evidence. *See, e.g., Doulin,* 538 F.2d at 470; *United States v. Mancuso,* 485 F.2d 275, 283 (2d Cir.1973) (testimony is material if it provides "an evidentiary stone in the larger edifice"); *see also Scivola,* 766 F.2d at 44 (testimony is material if relevant to credibility issues).

Even if we were to presume that all of the activities about which Nazzaro testified fell outside the statute of limitations—and the events connected with Count Four clearly did not, *see supra* Part III(B)—appellant's argument fails to appreciate the relationship between his testimony and the series of events which the grand jury was properly investigating. Without question, Nazzaro's testimony bore crucially upon the activities of Gerald Clemente, the kingfish of the master conspiracy. It also had the potential of providing valuable leads as to how Examscam worked, how long it lasted, and who participated in it. The testimony was "capable of influencing the tribunal on the issue[s] before it," *Scivola,* 766 F.2d at 44 (quoting *United States v. Giarratano,* 622 F.2d 153, 156 (5th Cir. 1980)); and, because of Nazzaro's mendacity, the information imparted had a natural tendency to obstruct and obfuscate the very subject of the grand jury's investigation. No more was required. The testimony was within the ambit of, and conspicuously material to, the grand jury's investigation. *Compare, e.g., United States v. Picketts,* 655 F.2d 837, 841 (7th Cir.) (grand jury testimony may be material even where limitation period has expired as to events about which defendant testified), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981); *United States v. Reed,*

647 F.2d 849, 853 (8th Cir.1981) (similar); *United States v. Cohn,* 452 F.2d 881, 883 (2d Cir.1971) (similar), *cert. denied,* 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972).

■ Appellant's next contention is equally spavined. He argues that the government failed to furnish sufficient evidence that his testimony was within the reach of the grand jury's inquiry. He suggests that, perhaps, the government should have proved materiality "by calling the foreman or some other member of the Grand Jury to establish the investigation's scope." Appellant's Brief at 27. But, there are many acceptable ways of proving the scope of a probe undertaken by a duly empaneled grand jury. *See United States v. Ostertag,* 671 F.2d 262, 265 (8th Cir.1982) ("government may prove materiality in various ways"). Although testimony from a grand juror is among the available alternatives, *e.g., United States v. Saenz,* 511 F.2d 766, 768 (5th Cir.) (per curiam), *cert. denied,* 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277 (1975), it is not indispensable to proof of the point. Here, the government adequately met its burden by submitting for the court's inspection transcripts of witnesses' testimony as presented to the grand jury, *see, e.g., United States v. Pandozzi,* 878 F.2d 1526, 1533 (1st Cir.1989), and an FBI report of an interview with Gerald Clemente. In addition, the indictment itself provided the district court with some evidence of the scope of the grand jury investigation. *See Picketts,* 655 F.2d at 839; *United States v. Bell,* 623 F.2d 1132, 1135 (5th Cir.1980).

Appellant's third assault on materiality has three interrelated aspects. Nazzaro complains (1) that the district court erred in neglecting to submit the question to the jury; (2) that the failure violated his rights under the sixth amendment, *see, e.g., United States v. Argentine,* 814 F.2d 783, 788 (1st Cir.1987) (in a criminal case, "court may not step in and direct a finding of contested fact in favor of the prosecution"); and (3) that the court's charge, insofar as it touched upon materiality, was erroneous in any event. All three prongs of appellant's complaint are shopworn.

■ It is well settled, on the highest and best authority, that the materiality of perjurious testimony is within the exclusive domain of the court, not the jury. *See Sinclair v. United States,* 279 U.S. 263, 298, 49 S.Ct. 268, 273, 73 L.Ed. 692 (1929) ("the materiality of what is falsely sworn, when an element in the crime of perjury, is one for the court"). We have consistently followed this directive, *see, e.g., Doherty,* 867 F.2d at 69; *United States v. Glantz,* 847 F.2d 1, 11 (1st Cir.1988); *United States v. Stackpole,* 811 F.2d 689, 695 (1st Cir. 1987); *United States v. Collatos,* 798 F.2d 18, 19 (1st Cir.), *cert. denied,* 479 U.S. 993, 107 S.Ct. 594, 93 L.Ed.2d 595 (1986); *Scivola,* 766 F.2d at 44, and deem ourselves firmly bound by the precedent. In any event, appellant has offered us no persuasive reason to depart from so established a principle.[4]

■ Nazzaro's contention that the court's jury instructions were erroneous because they did not specifically say that defendant had to "knowingly make false statements," using these exact words, need not occupy us for long. We do not believe that this objection to the charge was adequately preserved, Fed.R.Crim.P. 30, and defendant's point, such as it may be, is thus reviewable only for plain error. *See United States v. Griffin,* 818 F.2d 97, 99–100 (1st Cir.), *cert. denied,* 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). Fur-

---

**4.** The caselaw upon which appellant relies is inapposite. By and large, his cases involve crimes other than perjury. *See, e.g., United States v. Halbert,* 640 F.2d 1000, 1007–08 (9th Cir.1981) (mail fraud); *United States v. Johnson,* 718 F.2d 1317, 1325 (5th Cir.1983) (interstate transportation of fraudulent securities). The two exceptions do not carry the day. Contrary to appellant's intimation, *Luse v. United States,* 49 F.2d 241 (9th Cir.1931), is four square with

the authority within this circuit. *See id.* at 246 (in perjury case, "it was for the court to say whether or not the false evidence was material"). The only other perjury case cited, *United States v. Taylor,* 693 F.Supp. 828 (N.D.Cal.1988), *appeal dism'd,* 881 F.2d 840 (9th Cir.1989), suggesting that *Sinclair* has been implicitly overruled, is thoroughly unconvincing. We decline to follow it.

thermore, "[t]he charge must, of course, be considered as a whole, not in isolated bits and pieces." *Cintolo*, 818 F.2d at 1003. Error cannot "successfully be assigned to the 'trial court's failure to use the precise language that defendant ... would have preferred.'" *Id.* at 1004 (quoting *United States v. Lavoie*, 721 F.2d 407, 409 (1st Cir.1983), *cert. denied*, 465 U.S. 1069, 104 S.Ct. 1424, 79 L.Ed.2d 749 (1984)).

In sum, it is the judge's responsibility to ensure that the jury understands and appreciates the applicable law, and he is entitled to appreciable leeway in the manner of expression. In this instance, the jury instructions, viewed in their entirety, satisfactorily informed the jury of the statute's scienter requirement. We discern no error, plain or otherwise.

Nazzaro's last point on this score is that the lower court failed to make an explicit finding of materiality on the record. That is true—and we would prefer that it were otherwise. Even on an issue such as materiality, clearly for the court, express findings are helpful. Such findings not only insure that all the appropriate bases are touched, but serve to explicate the trial judge's reasoning. We value such insights. Without them, an appellate court may, at times, be forced to remand in order to apprehend the genesis of what transpired below, and the judge's rationale. *E.g., Myers v. Gulf Oil Corp.*, 731 F.2d 281, 284 (5th Cir.1984).

Be that as it may, the shortcoming is more apparent than real. That the district court considered, and found, materiality is not in doubt: in effect, the court told the jury during the charge that it had resolved the issue of materiality in the government's favor. And, materiality is a question of law. *See supra* p. 1166. As such, it is subject to *de novo* review on appeal. The circumstances of this case are of a nature that we can, even unaided by expository guidance from the nisi prius court, accurately determine that the questions and answers were material to the grand jury's investigation. Vacating the judgment is not required.

## V. POTPOURRI

Defendant has fired two further shots which merit mention, although neither demands extensive discussion. We address each assertion separately.

### A. *The Police Officers' Conviction.*

During jury deliberations, appellant's counsel brought to the court's attention newspaper articles concerning the conviction of certain Boston police officers the day before on extortion and racketeering charges. He asked that the court interrupt the deliberations and engage in an individual voir dire as to the unsequestered jurors' exposure to this publicity. The court denied the motion. Appellant assigns error to the denial.

The judge in a criminal case need not automatically accede to a voir dire request whenever the boggart of possible prejudicial influence is raised by a party in interest. Rather, the law wisely affords the trier—who is on the front lines, sensitive to the nuances of the case before him—substantial discretion in determining whether to interrogate jurors, and if so, when and how. *See Ristaino v. Ross*, 424 U.S. 589, 594–95, 96 S.Ct. 1017, 1020, 47 L.Ed.2d 258 (1976); *Marshall v. United States*, 360 U.S. 310, 312, 79 S.Ct. 1171, 1172, 3 L.Ed.2d 1250 (1959); *Therrien v. Vose*, 782 F.2d 1, 4 (1st Cir.), *cert. denied*, 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 727 (1986). Judges are not required to quiz jurors on demand, *cf. Neron v. Tierney*, 841 F.2d 1197, 1200 (1st Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988); to the contrary, it is the movant's burden to make a threshold showing sufficient to warrant inquiry.

Here, the newspaper stories cited by Nazzaro concerned not his case, or one like it, but a disparate matter: officers from a different police department had been convicted of an entirely different set of crimes. The nexus between the articles and the case on trial ranged somewhere between slim and none; the potential for prejudice was correspondingly farfetched. The judge, throughout the trial, had repeatedly cautioned the jurors against extra-judicial influences, media included. All in all, we think that the refusal to order a voir dire

was well within the district court's discretion. *Compare, e.g., United States v. Maceo,* 873 F.2d 1, 6 (1st Cir.) (voir dire not required where defendant simply "concluded that the newspaper article discussing drug raids against some Hispanics somewhere in Rhode Island has necessarily prejudiced the jury against him"), *cert. denied,* —— U.S. ——, 110 S.Ct. 125, 107 L.Ed.2d 86 (1989); *cf. United States v. Polito,* 856 F.2d 414, 418–19 (1st Cir.1988) (no voir dire necessary where incident not egregious, and judge gave strong, twice-repeated prophylactic instruction).

### B. *Defendant's Commendations.*

■ At trial, defendant attempted to offer into evidence his resume and other anecdotal proof of commendations received by him in military service and as a police officer. He also sought to show that a medal was bestowed upon him for special valor. The district court rejected the proffer. We decline to upset its ruling.

Nazzaro argues that evidence of such awards and commendations comprised "character evidence," admissible under Fed.R.Evid. 404(a)(1) (allowing an accused to offer "[e]vidence of a pertinent trait of character"). Assuming, without deciding, that these materials can be considered "character evidence" at all, the traits which they purport to show—bravery, attention to duty, perhaps community spirit—were hardly "pertinent" to the crimes of which Nazzaro stood accused. The district court, which has some flexibility in admitting or excluding evidence on the basis of relevancy, *see, e.g., United States v. Tierney,* 760 F.2d 382, 387 (1st Cir.), *cert. denied,* 474 U.S. 843, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985); *United States v. Sorrentino,* 726 F.2d 876, 886 (1st Cir.1984), was within its lawful powers in rejecting the proffer. *See generally Michelson v. United States,* 335 U.S. 469, 477–80, 69 S.Ct. 213, 219–20, 93 L.Ed. 168 (1948) (describing complexity and subtlety of character evidence; emphasizing discretion to be accorded trial court in handling such issues). Moreover, the evidence, as presented below, seems to us classic hearsay, and inadmissible for that reason as well. *See United States v. Barry,* 814 F.2d 1400, 1404 (9th Cir.1987) (letters of commendation concerning defendant, a lieutenant in the naval security police, properly excludable on hearsay grounds). And, given the copious quantity of character evidence offered and admitted at Nazzaro's trial, the commendations were also excludable as cumulative under Fed.R. Evid. 403. *See Hamling v. United States,* 418 U.S. 87, 127, 94 S.Ct. 2887, 2912, 41 L.Ed.2d 590 (1974) (discussing trial court's "considerable latitude" to reject evidence which, though arguably relevant, is cumulative); *Sorrentino,* 726 F.2d at 886 (similar).

There was no abuse of discretion attending the court's decision to exclude the proffered material.

## VI. CONCLUSION

We need go no further. The examination is over and the scoresheet compiled. For the reasons stated, the government's case under Count One fails to receive a passing grade. The three remaining convictions may stand.

*The judgment of conviction is affirmed as to Counts Two, Three, and Four and reversed as to Count One.*