**UNITED STATES of America, Appellant,**

v.

**Michael J. DOHERTY, Appellee.**

**No. 89–2167.**

United States Court of Appeals, First Circuit.

Heard May 11, 1990.
Decided June 21, 1990.

Alexandra Leake, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for U.S.

Mary Ellen Kelleher with whom Richard M. Egbert, Boston, Mass., was on brief, for appellee.

Before BREYER, Chief Judge, ROSENN,* Senior Circuit Judge, and CAMPBELL, Circuit Judge.

ROSENN, Circuit Judge.

This case is another painful sequel to the corruption scheme colloquially known as "Examscam" which rocked Massachusetts law enforcement circles several years ago. The grand jury for the United States District Court for the District of Massachusetts returned a seven count indictment against appellee, Michael Doherty, a Medford, Massachusetts police officer, principally charging him with falsely representing that he had attended Bunker Hill Community College (Bunker Hill) and earned an associate degree in law enforcement and criminal justice. The indictment's seventh count charged that Doherty had perjured himself before an earlier grand jury, which had indicted him in Examscam. The district court, upon motion by Doherty, dismissed this count, ruling that any false statements relating to his educational background were not material to the Examscam grand jury's investigation. The Government appeals, urging that Doherty's educational background was material to motive, intent, and credibility. We reverse and remand for further proceedings.

I.

In December 1985, a federal grand jury in Massachusetts investigated allegations that certain law enforcement officers in the Medford Police Department illegally received advance copies of a civil service examination used by Massachusetts police departments to evaluate applicants for new positions and promotions. This court previously described the scheme as:

---

* Of the Third Circuit, sitting by designation.

[A] tawdry chapter in the annals of Massachusetts law enforcement known familiarly as "Examscam," a network of alleged conspiracies aimed at purloining advance copies of civil service examinations and selling them to police officers so they could fraudulently obtain promotions.

*United States v. Nazzaro*, 889 F.2d 1158, 1160 (1st Cir.1989).

As part of the investigation, the grand jury called the defendant Doherty to testify. Doherty had taken the October 1, 1983, civil service examination and achieved a perfect score. On the strength of this score, he obtained an appointment to the Medford Police Department, joining the department in September 1984. Doherty graduated from Medford Vocational–Technical High School (Vo–Tech) in June 1982 where he achieved a mediocre class rank of 70 out of 110, earning mostly C and D grades.

In response to questions similar to those asked of other Examscam witnesses, Doherty testified that he had attended Vo–Tech and that he also had attended and graduated from Bunker Hill with an associate degree in criminal justice. The grand jury never requested, nor was it given, Doherty's transcript from Bunker Hill.[1] The grand jury subsequently returned an indictment in the Examscam case, naming Doherty in three counts; one count of conspiracy to defraud, and two counts of perjury for allegedly lying before the grand jury about receiving advance copies of the civil service examination. A petit jury later acquitted Doherty on all three counts.[2] The Government now contends that Doherty neither attended nor enrolled in Bunker Hill.

1. The Government asserted at argument in this court that Doherty was questioned before the grand jury concerning his grades at Bunker Hill. This testimony has never been placed in the record in the present proceedings before either this court or the district court. We do not rely upon it in our decision.

2. At the criminal trial, the Government sought to introduce Doherty's high school transcript, but the court excluded the evidence. The trial

A subsequently impaneled grand jury investigated the veracity of Doherty's assertions made to the Examscam grand jury, and in several documents that he used to gain salary increases, that he had matriculated at and been graduated from Bunker Hill. This grand jury returned a seven count indictment against Doherty. It charged him in count one through six with mail fraud by using the mails to falsely represent his educational background in an effort to fraudulently qualify for a higher wage rate and in count seven with perjury before the Examscam grand jury in violation of 18 U.S.C. § 1623.

Upon motion by Doherty, the district court dismissed count seven, ruling that Doherty's assertion that he had received a degree was immaterial to the grand jury's investigation and thus did not constitute perjury under the statute. The court ruled:

Because the allegedly false statements at issue in Count Seven of the Indictment were not material to the Grand Jury's investigation at which statements were allegedly made, Defendant's Motion to Dismiss Count Seven of the Indictment is hereby ALLOWED.

The Government appealed.

II.

To sustain a perjury conviction under section 1623, the Government has the burden of proving that the defendant made a "false material declaration." 18 U.S.C. § 1623(a). It is not sufficient that the statement be merely false, it must also be material to the grand jury's investigation. Materiality under this section is a question of law, *United States v. Scivola*, 766 F.2d 37, 44 (1st Cir.1985), and thus subject to de novo review by this court.

court ruled that "the chain of causation" between the poor high school record and the perfect score on the civil service examination was broken by Doherty's intervening performance at Bunker Hill, as evidenced by his transcript from Bunker Hill. The Government now alleges, and counts one through six of the present indictment charge, that this Bunker Hill transcript was a forgery and was fraudulently used and obtained.

*United States v. Kiszewski,* 877 F.2d 210, 218 (2d Cir.1989); *United States v. Martinez,* 855 F.2d 621, 623 (9th Cir.1988).

■ A statement of a witness to a grand jury is material if the statement is *capable of influencing* the grand jury as to any proper matter pertaining to its inquiry or which *might have influenced* the grand jury or impeded its inquiry. *United States v. Pandozzi,* 878 F.2d 1526, 1532–33 (1st Cir.1989). To be material, the testimony need not directly concern an element of the crime pertinent to the grand jury's investigation, *Nazzaro,* 889 F.2d at 1165, nor need it *actually* influence the jury. Because grand juries have wide ranging powers, "courts must indulge comparable breadth in construing the materiality" of testimony before the grand jury. *Id.* The Government need only establish "a nexus between the false statements and the scope of the grand jury's investigation." *United States v. Farnham,* 791 F.2d 331, 333 (4th Cir.1986).

■ Merely because the false information may be biographical in nature does not necessarily make it immaterial. The information must be viewed in the context of the grand jury's investigation; if there is a logical nexus between the biographical information and the scope of the grand jury's investigation, the biographical information is material. *See Martinez,* 855 F.2d at 624 and n. 2 (majority opinion) and 625 (Wiggins, J., dissenting) (recognizing that a person's name could be material). For example, though information regarding marital status is generally biographical in nature, it obviously could be material as well before a grand jury investigating bigamy.

■ In the present case, Doherty allegedly committed perjury by falsely claiming that he had attended and earned a degree in criminal justice from Bunker Hill. He made these claims before a grand jury investigating charges that he, and others, had received unlawful assistance on a civil service examination in which he achieved a perfect score. A person with such a degree is less likely to cheat or be motivated to cheat on an examination testing knowledge of criminal justice for purposes of appointment or promotion to a police position.

It is self-evident that a person who has had significant collegiate training in criminal justice is more likely to obtain a higher score on an examination in that field than a person with no such training. Taking criminal justice courses, in theory, should prepare test-takers with the pertinent principles of law and preparatory background to successfully meet applications upon which the test is conducted. Thus, if Doherty did receive an associate degree in criminal justice, it is more likely that he *earned* his perfect score than if he had no such education. Furthermore, the more likely it is that if he earned his score, the less likely is it that he purloined an advance copy of the police examination. Thus, the allegedly false testimony seems to corroborate his alibi that he obtained the perfect score through skill and knowledge rather than through fraud and deception. Such corroborative testimony is material. *See Nazzaro,* 889 F.2d at 1165.

The testimony also reflects upon Doherty's motive to attempt to utilize illicit assistance. A person who has had formal college education in criminal justice is likely to be confident in his ability to pass an examination for an ordinary police position or promotion. Such a person already has passed numerous courses, and presumably tests, in the very area on which the test is conducted. On the other hand, a person without a degree or any special training in the discipline, having no such experience or preparation, likely will feel more pressure to use outside assistance to overcome the lack of formal preparation. For example, a law school graduate who has taken the relevant preparatory courses is theoretically less likely to succumb to the temptation to cheat on a bar examination than is someone without comparable legal preparation. In all probability, the grand jury in its inquiry evaluated these very motivations to determine if it was more probable than not that Doherty acquired his perfect score through illegal assistance. Therefore, this testimony, which is relevant to Doherty's motivation, is material. *See United States*

*v. Gremillion,* 464 F.2d 901, 905 (5th Cir.), *cert. denied,* 409 U.S. 1085, 93 S.Ct. 683, 34 L.Ed.2d 672 (1972).

Finally, the materiality of Doherty's disputed degree from Bunker Hill was established most evidently by his own counsel's proffer of the allegedly falsified Bunker Hill transcript as evidence at his first criminal trial. Doherty's counsel offered this evidence for the same reasons it was material to the grand jury, to corroborate Doherty's alibi, and to establish that he did not have a motive to purloin an advance copy of the entrance examination. The Bunker Hill transcript, and his representation that he had obtained his associate degree, "broke the chain of causation" between his poor high school performance. The degree created an impression that sometime after high school he had managed to become a serious, intelligent student, a student capable of earning a perfect score on a police entrance examination. Testimony which created this impression was material to the grand jury's investigation, and if false, formed a proper basis for prosecution under 18 U.S.C. § 1623.

### III.

In sum, we hold that when the testimony of a target witness, although biographical in nature, before a grand jury investigating a conspiracy to commit fraud is relevant to motivation and the likelihood that the witness participated in the conspiracy, the testimony has a logical nexus to the grand jury's inquiry, and thus is material under 18 U.S.C. § 1623. The district court, therefore, erred in dismissing count seven of the indictment against Doherty.

Accordingly, the order of the district court is REVERSED and count seven of the indictment REMANDED for further proceedings consistent with this opinion.