21 F.3d 425
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
James E. DAVIS, Defendant-Appellant.
 No. 93-5325.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 10, 1994.
Decided April 5, 1994.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Charles H. Haden II, Chief Judge. (CR-92-278-2)
 
 
 1
 Argued James McCall Cagle, Charleston, WV, for appellant.
 
 
 2
 Larry Robert Ellis, Asst. U.S. Atty., Charleston, WV, for appellee.
 
 
 3
 On Brief Charles T. Miller, U.S. Atty., Charleston, WV, for appellee.
 
 
 4
 S.D.W.Va.
 
 
 5
 AFFIRMED.
 
 
 6
 Before PHILLIPS, Circuit Judge, BUTZNER, Senior Circuit Judge, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 OPINION
 PER CURIAM:
 
 7
 James Davis, a Federal Coal Mine Inspector, assigns error to the judgment of the district court entered on the verdict of a jury convicting him of violating 18 U.S.C. Sec. 371 for conspiracy to solicit something of value from a coal company in violation of 18 U.S.C. Sec. 201. Davis also appeals his conviction for knowingly making false declarations in a proceeding before a grand jury in violation of 18 U.S.C. Sec. 1623. Because we find that there was sufficient evidence to support his conspiracy conviction and because we find that the district court did not err in its instructions to the jury on the perjury count, we affirm.
 
 
 8
 * As a Federal Coal Mine Inspector working for the Mine Safety and Health Administration, Davis was responsible for conducting mine safety inspections and accident investigations in the Logan, West Virginia, region.
 
 
 9
 Davis's supervisor, Erman Altizer, discussed with Davis the need to secure a job for Altizer's daughter at one of the mines in their jurisdiction, the Marrowbone Development Company's "Western Mingo" facility. Both Davis and another mine inspector who took part in this conversation promised Altizer that they would talk to Fred Lovins, the mine supervisor at Western Mingo, about a position there for Altizer's daughter.
 
 
 10
 Within several weeks, Altizer again discussed with Davis the urgency of the daughter's need for the job. This second conversation took place in Davis's office where, unbeknownst to him, James Massey, another mine inspector, who was cooperating with the government in its investigation of corruption, was taping the exchange.
 
 
 11
 During the discussion Davis directed Massey to "[g]et the job for her." Davis then told Massey, "between me and you, we'll take care of Fred Lovins--ever what--whatever we can." Davis also repeated his order to Massey about soliciting the job from Lovins.
 
 
 12
 The following year, Davis appeared before a federal grand jury where he was questioned about the preceding conversations, about the origins of an all-terrain vehicle delivered to Altizer's home, and about a mine accident. At the time, Davis knew that members of his office were subjects of a criminal investigation of illegal solicitation of gratuities. Before the grand jury questioning began, the prosecutor explained to Davis his rights as a witness and warned him about the consequences of perjury. Davis testified under oath that he had never been involved in requesting a job for anyone at Marrowbone.
 
 II
 
 13
 Davis asserts that the prosecution did not present sufficient evidence at trial to support his conviction for conspiracy to solicit a gratuity in violation of 18 U.S.C. Secs. 201, 371. To prevail in a conspiracy prosecution the government must prove beyond a reasonable doubt that the defendant was a party to an agreement to commit an offense and that at least one conspirator undertook an act in furtherance of that agreement. United States v. Falcone, 311 U.S. 205, 210 (1940).
 
 
 14
 The government introduced the taped conversation during which Davis asked another mine inspector to approach a mine operator about the job for Altizer's daughter. Also, Altizer testified that he and Davis had twice discussed approaching Lovins about the job. Altizer related that Davis told Massey that they "would take care of Mr. Lovins."
 
 
 15
 Viewing the evidence in the light most favorable to the government, we find that there was sufficient evidence for a reasonable jury to determine Davis's guilt on the conspiracy count. See Glasser v. United States, 315 U.S. 60, 80 (1942). The evidence disclosed that an agreement existed between Davis and Altizer to secure employment for Altizer's daughter and that Davis's instruction to his subordinate to talk to a mine operator about the job was an act in furtherance of the conspiracy.
 
 III
 
 16
 Davis also assigns error to the court's instruction that the false statements made to the grand jury were material within the meaning of the perjury statute, 18 U.S.C. Sec. 1623.
 
 
 17
 Davis's contention is contrary to dictum in Sinclair v. United States, 279 U.S. 263, 298 (1929), which declares that the materiality of perjury, although an element of the crime, is a question of law for the court to decide. Accord United States v. Paolicelli, 505 F.2d 971, 973 (4th Cir.1974).
 
 
 18
 Davis relies primarily on United States v. Taylor, 693 F.Supp. 828 (N.D. Cal.1988), in which the court, after thoroughly canvassing the Ninth Circuit cases and recent Supreme Court opinions, concluded that materiality is a question of fact that must be submitted to the jury. Taylor views Sinclair as no longer controlling because In re Winship, 397 U.S. 358, 361-64 (1970), emphasizes the necessity of proving every element of a crime by proof beyond a reasonable doubt. In a different context, the Ninth Circuit has held that the materiality of a false statement made to a government agency cannot be decided by a judge as a matter of law; instead, the materiality of the false statement must be determined by a jury. United States v. Gaudin, 997 F.2d 1267, 1271 (9th Cir.1993); but see United States v. Martinez, 855 F.2d 621, 623 (9th Cir.1988) (materiality is a legal question).
 
 
 19
 We are not persuaded that Winship implicitly overrules Sinclair and other cases that consider materiality of a false statement to be question of law for the court to decide. E.g., Kungys v. United States, 485 U.S. 759, 772 (1988); Russell v. United States, 369 U.S. 749, 755-59 (1962); Braden v. United States, 365 U.S. 431, 435-38 & n. 6 (1961). Although Winship explains in general terms that the prosecutor must prove every element of a crime beyond a reasonable doubt, the Court's rule is more precise: "[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364. Because Winship refers to proof of facts, it is not inconsistent with Sinclair 's reference to materiality as a legal question.
 
 
 20
 The defendant in United States v. Nazzaro, 889 F.2d 1158 (1st Cir.1989), raised the same point as that raised by Davis in the case before us. Both assert that the district court deprived them of their Sixth Amendment rights by declining to submit the issue of materiality to the jury. The First Circuit rejected this argument by adhering to Sinclair. It declined to adopt the rationale of Taylor, 889 F.2d at 1166 & n. 4.
 
 
 21
 In agreement with the First Circuit, we perceive no justification for departing from Sinclair. We conclude that the district court did not infringe Davis's Sixth Amendment right to a trial by jury when it decided the issue of materiality as a matter of law.
 
 
 22
 The government presented evidence that the statements that Davis made before the grand jury concerned his participation in a bribery conspiracy involving federal mine inspectors. Davis's denial of involvement was material to the inquiry about violations of 18 U.S.C. Sec. 201 because it had the potential to influence the grand jury on issues before it. See United States v. Friedhaber, 856 F.2d 640 (4th Cir.1988) (en banc); United States v. Bailey, 769 F.2d 203, 204 (1985). For these reasons, we uphold the materiality determination of the district court.
 
 IV
 
 23
 Also, we find no error in the district courts refusal to instruct the jury on entrapment with respect to the false statement charge. A defendant is generally entitled to an instruction about any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor. Mathews v. United States, 485 U.S. 58, 63 (1988); United States v. Ricks, 882 F.2d 885, 893 (4th Cir.1989). Davis, however, did not introduce sufficient evidence to justify an entrapment defense.
 
 V
 
 24
 Finally, Davis argues that the district court erred in refusing to dismiss the second superseding indictment that the grand jury returned because no evidence was offered to support it.
 
 
 25
 The grand jury indicted Davis on the charges for which he was eventually convicted. In the meantime, a superseding indictment, that the same grand jury returned, charged Davis with aiding and abetting Altizer in the unlawful receipt of the all-terrain vehicle. A second superseding indictment that this grand jury returned eliminated this aiding and abetting charge. Alleged errors in grand jury proceedings are not reviewable absent a showing of prejudice to the defendant. Bank of Nova Scotia v. United States, 487 U.S. 250, 254-55 (1988). There was sufficient evidence before the grand jury for it to return the first indictment. And the charges upon which Davis was ultimately convicted, count 11 and count 12 of the final version, were the same in all three indictments. We find that because the same grand jury returned each of the three indictments in question there was no prejudice to Davis and, for this reason, no trial court error.
 
 
 26
 AFFIRMED.